UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PATRICIA EWING WILKERSON,          )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          No. 3:15-CV-13-TAV-HBG
                                   )
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,     )
                                   )
          Defendant.               )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 11 & 12] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 14 & 15].  Patricia Wilkerson ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 7, 2008, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability which began January 29, 2008.  [Tr. 171, 267].  After

her application was denied initially and upon reconsideration, the Plaintiff requested a hearing.

[Tr. 262].  On February 18, 2010, a hearing was held before the ALJ to review determination of

the Plaintiff's claim. [Tr. 192-227].  On June 18, 2010, the ALJ found that the Plaintiff was not

disabled.  [Tr. 168-170].  The Appeals Council denied the Plaintiff's initial request for review on

May 21, 2011.  [Tr. 70-72].  The Appeals Council subsequently reopened the case after the

Plaintiff submitted additional evidence for consideration [Tr. 81-165], but again denied the Plaintiff's request for review, finding that the new medical evidence received was rendered after the ALJ issued her decision. [Tr. 1-3]. Thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 13, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since January 29, 2008, the alleged onset date (20 CFR 416.971 *et seq.*).

3. The claimant has the following impairments, the combination of which is severe: status post left shoulder surgery; grade 4 chondral defect in left shoulder; hyperlipidemia; hypertension; status post right shoulder surgery; cervical spinal pain; lower back pain; carpal tunnel syndrome; depression; anxiety; mood disorder, not otherwise specific (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand up to six hours a day; sit up to six hours a day; she is

2

capable of only occasional reaching overhead or pushing or pulling with the left upper extremity; capable of understanding and remembering simple and detailed instructions; able with some difficulty to maintain concentration, persistence and pace to follow simple and detailed instructions; able with some difficulty to interact with the general public and without behavior extremes; and with some difficulty is able to adapt to changes in the routine workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 40.1565).

7. The claimant was born on June 29, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using a Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2008, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 173-85].


## II.     DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she:

(1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for

DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

3

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

4

404.1520).  The claimant bears the burden of proof at the first four steps.  Id.  The burden shifts

to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there

is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146

(1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th

Cir. 2004).    Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981))

(internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice'

5

within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.     EVIDENCE

     A.     Evidence regarding physical impairments

On July 31, 2007, the Plaintiff came under the care of William M. Hovis, M.D., for a neck and left shoulder injury that she had sustained the prior month after she was attacked at work. [Tr. 799-801]. Dr. Hovis had previously performed an arthroscopy with debridement and acromioplasty to the Plaintiff's right shoulder two years earlier after the Plaintiff endured a different work related accident. [Tr. 921]. Dr. Hovis assessed an anterosuperior labral tear to the Plaintiff's left shoulder. [Tr. 799]. On August 8, 2007, the Plaintiff underwent surgery consisting of an arthroscopy to her left shoulder with anterior labrum and bankart resonction, left

6

shoulder bicep tendon release with superior labral debridement, and arthroscopic subacromial decompression with debridement of small partial thickness rotator cuff tear. [Tr. 511-18]. After continued complaints of neck pain and numbness, Dr. Hovis performed a second arthroscopy to the Plaintiff's left shoulder on January 20, 2008. [Tr. 524-29]. Thereafter, on November 13, 2008, Dr. Hovis opined the following permanent work restrictions in regard to the Plaintiff's left shoulder: (1) no overhead lifting; (2) no more than 10 pound lifting to chest height; and (3) no more than five pound repetitive lifting to chest height. [Tr. 785].

The Plaintiff received physical therapy for her left shoulder between August 23, 2007 and December 26, 2007. [Tr. 481-94]. On October 13, 2008, physical therapist Chip Ladd completed a "Treating Relationship Inquiry" wherein he answered a number of multiple-choice and short answer questions regarding the Plaintiff's functional limitations. [Tr. 782-84]. Mr. Ladd opined that the Plaintiff could sit for eight hours during a normal workday and could stay seated for 30-45 minutes at a time before needing to take a 10 minute break every hour during a workday. [Tr. 782-83]. The Plaintiff could occasionally lift or carry up to five pounds, occasionally grasp, and frequently finger and feel with both hands. [Id.]. Mr. Ladd opined that it would depend on the job description whether the Plaintiff could attend an eight-hour workday, 40-hours a week, week after week, without missing more than two days per month. [Tr. 782]. Moreover, the Plaintiff would require more than three breaks during an eight-hour workday. [Id.].

A "Physical Residual Functional Capacity Assessment" was completed by a state agency physician on July 19, 2008, where in the physician opined that the Plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently, stand, walk, and/or sit for six hours in an eight-hour workday, had limited ability to push or pull with upper extremities as well as reach in

all directions, but had unlimited ability to handle, finger, or feel. [Tr. 574-81]. A second "Physical Residual Functional Capacity Assessment" was completed by a different state agency physician on January 2, 2009, mirroring the findings of the first assessment. [Tr. 702-10].

**B.** **Evidence regarding mental impairments**

The Plaintiff established care with Cherokee Health Systems on October 21, 2008, at which time France L. Cartwright, MSW, diagnosed the Plaintiff with Bipolar Affective Disorder –Depressed–Severe, and recommended bi-weekly therapy sessions and medication management. [Tr. 693]. At the time, the Plaintiff was given a global assessment of functioning ("GAF") score of 40 [Id.], indicating some impairment in reality testing or communication, or major impairment in several areas, such as work, family relationships, or judgment. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000. On January 12, 2010, Ms. Cartwright completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)," wherein she opined that the Plaintiff was moderately to markedly impaired in her ability to understand and remember, sustain concentration and persistence, interact socially, and adapt to change. [Tr. 999-1000]. Ms. Cartwright explained that the Plaintiff lacked the ability and capacity to work on a predictable basis because she has difficulty interacting with others and her response to upsetting events was out of proportion to the triggering event. [Tr. 1000]. Moreover, the Plaintiff routinely spends two to three days a week in a very depressed and irritable mood, resulting in an inability to leave the house. [Id.]. Ms. Cartwright also wrote a letter on May 10, 2010, detailing her two year treating relationship with the Plaintiff, the numerous symptoms that Plaintiff experienced, and the opinion that the Plaintiff "is not able to work on a reliable basis in her current condition." [Tr. 1024].

A consultative examination was performed by Tracy L. Allred, Ed.D., on July 30, 2008.

8

[Tr. 550-53]. Dr. Allred diagnosed the Plaintiff with Bipolar Disorder, not otherwise specific, and opined that the Plaintiff was mildly limited in her ability to understand and remember, mildly to moderately limited in her ability to sustain concentration and persistence, and moderately limited in her ability to interact socially and adapt or tolerate stress associated with daily living activities. [Tr. 552-53].

On August 23, 2008, a state agency psychologist completed a "Mental Residual Functional Capacity Assessment" where in the psychologist opined that the Plaintiff was able to understand and remember simple and detailed things, but had some difficulty maintaining attention, concentration, persistence and pace, interact appropriately with the general public and with others without behavioral extremes, and adapt to change. [Tr. 584].

## V.    POSITIONS OF THE PARTIES

On appeal the Plaintiff sets forth two assignments of error. First, the Plaintiff argues that the ALJ's decision failed to properly weigh the opinions of Dr. Hovis, Mr. Ladd, and Ms. Cartwright. [Doc. 12 at 16-21]. Second, the Plaintiff contends that the Appeals Council should have considered new evidence the Plaintiff submitted to the council after it had initially denied the Plaintiff's request for review. [Id. at 21].

The Commissioner responds that substantial evidence supports the ALJ's evaluation of each medical opinion challenged by the Plaintiff. [Doc. 15 at 4-11]. Additionally, the Commissioner maintains that the Appeals Council properly declined to review the new evidence submitted by the Plaintiff. [Id. at 12].

## VI.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.    Opinion Evidence

#### 1.    *Treating Physician William M. Hovis, M.D.*

The Plaintiff challenges the ALJ's assignment of "little weight" to Dr. Hovis' permanent left shoulder restrictions. [Doc. 12 at 16]. The Plaintiff acknowledges that the ALJ assigned "little weight" to Dr. Hovis' opinion but argues that later in the decision, where the ALJ discussed the remaining opinion evidence of record, the ALJ failed to specify the weight given to Dr. Hovis' opinion. [Id.]. In addition, the Plaintiff takes issue with the ALJ's failure to state what medical evidence was relied upon in discounting Dr. Hovis' opinion. [Id. at 17]. Lastly, the Plaintiff maintains that the ALJ failed to address the "mandatory factors listed in § 404.1527(d) after deciding not to give Dr. Hovis' opinion controlling weight." [Id.].

The Commissioner maintains that the ALJ reasonably relied upon the Plaintiff's reported daily living activities in rejecting the limitations assessed by Dr. Hovis. [Doc. 15 at 7]. Further, the Commissioner argues that the ALJ's decision was supported by substantial evidence given the inconsistencies between Dr. Hovis' opinion and the other medical opinions of record, as well as the Plaintiff's conservative and minimal treatment record. [Id.].

In discussing the Plaintiff's left shoulder restrictions opined by Dr. Hovis, the ALJ found that "[b]ecause of the claimant's admitted activities of daily living (discussed later in this opinion), the undersigned gives Dr. Hovis' opinion as to the claimant's use of her left shoulder little probative weight, although, the undersigned has considered her left shoulder limitations in assessing the residual functional capacity." [Tr. 179]. Later in the opinion, the ALJ assessed the Plaintiff's credibility, finding that the Plaintiff's daily activities were not as restricted to the

10

extent one would expect given her allegations of disabling pain and limitations:

> [T]he claimant has reported the following daily activities: laundry, light cooking, driving, taking care of small children, and visiting with relatives (Exhibits 25F; 28F). She is apparently able to care for children at home, which can be quite demanding both physically and emotionally. In December 2008, she told her physician that she recently went on a two week long vacation trip with family (Exhibit 25F). In April 2009, she brought her 1 year old nephew to the physician's office with her and told the physician, "I am able to keep him" (Exhibit 24F). She testified at the hearing that she would kill her attacker if she "could get a hold of him". Furthermore, the claimant admitted to getting in a fight in Walmart in 2009 where she admittedly engaged in fisticuffs with another woman who allegedly pushed her, and the claimant tried to "push her head through the wall". The claimant's activities of daily living suggest the claimant's statements at the hearing about being "unable to lift 4 pounds" or "unable to lift a water jug" are wholly implausible.

[Tr. 180-81].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the

decision. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. 2007).

The Court finds no error is the ALJ's assessment of Dr. Hovis' opinion. First, the Plaintiff fails to cite any support for the proposition that the ALJ should have articulated twice, or in different portions of the disability decision, the weight assigned to Dr. Hovis' opinion. [Doc. 12 at 16]. The ALJ properly assigned a specific weight to Dr. Hovis' opinion [Tr. 179] followed by an explanation for that weight [Tr. 179, 180-81]. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (holding that the section 1527(c)(2) "factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight"). The ALJ had no obligation to restate the weight assigned to Dr. Hovis' opinion when he addressed the remaining opinion evidence of record.

Second, the ALJ provided "good reason" for discounting Dr. Hovis' opinion. In this regard, the Plaintiff argues that the ALJ failed to identify the medical evidence relied upon in rejecting the opinion. However, this District has held that a plaintiff's self-report of work-related and daily activities are a "valid reason" for discounting the opinion of a plaintiff's treating physician. Owen v. Astrue, No. 3:09-CV-369, 2010 WL 2985717, at *7 (E.D. Tenn. July 2, 2010) adopted by No. 3:09-CV-369, 2010 WL 2985718, *1 (E.D. Tenn. July 26, 2010); see Clayborn v. Astrue, No. 09-385-DLB, 2010 WL 5285316, at *5 (E.D. Ky. Dec. 17, 2010) ("In

12

explaining that he believed Plaintiff's daily activities are inconsistent with Dr. Hudson's restrictions, the ALJ provided good reasons for his decision not to accord the treating physician's opinion great weight."). The fact that the Plaintiff could perform routine household chores, take care of children, and apparently engage in a fistfight, among other activities, is sufficient evidence challenging Dr. Hovis' restrictive limitations.

Finally, while the Plaintiff contends that the ALJ erred in failing to consider all of the factors set forth in 20 C.F.R. § 404.1527(c) when discounting Dr. Hovis' opinion, specifically the length of treatment, frequency of examination, the nature and extent of the treatment relationship, and the supportability and consistency of the opinion, the Court is not persuaded. An ALJ is under no obligation to address each and every factor set forth in § 404.1527(c). As explained above, the ALJ need only provide "good reason" for the weight assigned to a treating physician. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . given to the treating source's opinion'—not an exhaustive factor-by-factor analysis.") (citing 20 C.F.R. § 404.1527(d)(2) (previous version, citation now found at 20 C.F.R. § 404.1527(c)(2)). In this instance, the Plaintiff's daily activities speak directly to the "supportability" and "consistency" of Dr. Hovis' opinion. See 20 C.F.R. § 404.1527(c)(3)-(4). Therefore, the Court finds that the ALJ provided good reason, supported by substantial evidence, for discounting the opinion of the Plaintiff's treating physician.

### 2.    *Physical Therapist Chip Ladd*

The Plaintiff also challenges the ALJ's assignment of "little weight" to Mr. Ladd's opinion. [Doc. 12 at 19]. The Plaintiff argues that the ALJ essentially discredited the opinion

13

because Mr. Ladd is not an "acceptable medical source." [Id.]. In addition, while the ALJ noted that Mr. Ladd's assessment was "internally inconsistent," the Plaintiff argues that there are no such inconsistencies. [Id.].

The Commissioner argues that because Mr. Ladd was not an "acceptable medical source," his opinion was appropriately evaluated under a less rigorous standard. [Doc. 15 at 10]. Moreover, the Commissioner points to several perceived inconsistencies within the assessment – that the Plaintiff could sit for eight hours during a regular workday yet could only work five hours a day, and that the Plaintiff's need for breaks was related to alleged neck pain which the ALJ recognized was not a primary disabling impairment – that she argues sufficiently negates the opinion's credibility. [Id. at 10-11].

The ALJ cited two reasons for assigning "little weight" to Mr. Ladd's opinion: (1) Mr. Ladd is not an "acceptable medical source," and (2) his opinion is "internally inconsistent." [Tr. 183]. As an example of an internal inconsistency, the ALJ explained, "when asked how many hours per day the claimant could sit continuously in an 8-hour workday, Mr. Ladd simply answered, 'Yes'." [Id.].

Under Social Security regulations, a physical therapist is not an "acceptable medical source" that can provide evidence to establish the existence of a medically determinable impairment. See 20 C.F.R. §§ 404.1513(a). However, the Plaintiff is correct that the ALJ cannot reject an opinion merely because the source is not an acceptable source. See Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007) (stating that Social Security Ruling 06-03p does not permit an ALJ to reject a source merely because the source is not listed as an "acceptable medical source"). As an "other source," a physical therapist's opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along

14

with the other relevant evidence in the file." Soc. Sec. Rul. 06-03p, 2006 WL 2329938, *3 (Aug. 9, 2006). In explaining the consideration given to opinions from "other sources," Social Security Ruling 06-03p states that an "adjudicator generally should explain the weight given to the opinions . . ., or otherwise ensure that the discussion of the evidence in determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

In the instant case, the Court is troubled by the ALJ's explanation for finding Mr. Ladd's opinion "internally inconsistent." Among the number of questions Mr. Ladd answered in the assessment, he was asked how many hours in an eight-hour workday the Plaintiff would be able to sit. [Tr. 782]. Instead of identifying a certain number of hours, Mr. Ladd wrote, "Yes." [Id.]. The ALJ cites this answer as an example of an internal inconsistency. [Tr. 183]. Perhaps the answer could be understood to mean that the Plaintiff could sit for an entire eight hours during an eight-hour workday. However, even assuming Mr. Ladd's answer was unclear as to how many hours the Plaintiff could sit, that does not mean the entire opinion must be rejected.

The Commissioner offers what she believes to be perceived inconsistencies, noting that Mr. Ladd opined that the Plaintiff could sit for eight hours, yet also opined that the Plaintiff could only work for five hours a day. The Court does not find these two limitations necessarily contradictory of one another because Mr. Ladd assessed other limitations, notably that the Plaintiff lacked stamina and endurance [Tr. 783], that could interfere with the Plaintiff's ability to work a full day, despite being able to sit for eight hours. The Commissioner also points out that Mr. Ladd attributed the Plaintiff's need for excessive breaks due to neck pain, but that the ALJ found the Plaintiff's neck pain was not a severe impairment. A non-severe impairment by definition, however, may still impose some type of limitation. See 20 C.F.R. § 404.1521(a)

15

(defining a non-severe impairment as an impairment that "does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities") (emphasis added). Nonetheless, the overreaching problem the Court has with the Commissioner's perceived inconsistencies is that they are not reasons articulated by the ALJ. The Court would have to speculate, which it is not permitted to do, as to what the ALJ might have meant by noting that Mr. Ladd's opinion was "internally inconsistent." See Hyatt Corp. v. N.L.R.B., 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's *post-hoc* rationalization for an agency's decision where no such explanation was enunciated in the decision).

Accordingly, the Court will recommend that this case be remanded to the ALJ to reevaluate Mr. Ladd's opinion consistent with Social Security 06-03p.

### 3. Social Worker Frances L. Cartwright

The Plaintiff similarly argues that the ALJ impermissibly discounted Ms. Cartwright's opinion because she is not an "acceptable medical source." [Doc. 12 at 19-20]. The Commissioner counters that the ALJ provided "a number of reasons" for rejecting the opinion. [Doc. 15 at 11].

In the decision, the ALJ noted that Ms. Cartwright was not an "acceptable medical source," but acknowledged that her opinion was nonetheless considered. [Tr. 183]. The ALJ treated Ms. Cartwright's letter, which opined that the Plaintiff "is not able to work on a reliable basis," as a finding of disability which the ALJ rejected and explained that such an issue is specifically reserved for the Commissioner. [Id.]. The ALJ then assigned "little weight" to Ms. Cartwright's assessment regarding the Plaintiff's functional limitations because it was not supported by the objective medical evidence. [Id.]. Specifically, the ALJ noted that while the Plaintiff was assigned a GAF score of 40 in November 2008, "the claimant's treatment notes

16

from Dr. Husseini during that time period show the claimant was suffering from car troubles and interpersonal troubles with her father and boyfriend (Exhibit 25F)," and therefore, the GAF score was representative of specific life stressors that were transitory in nature and was not "indicative of the claimant's longitudinal mental health." [Id.].

A licensed clinical social workers is not an "acceptable medical source," Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 119 (6th Cir. 2010), and therefore, Ms. Cartwright's opinion is subject to the same standard outlined in Social Security Ruling 06-03p as discussed above. The Court agrees with the ALJ that the Plaintiff's 2008 GAF score does not provide insight into the Plaintiff's longitudinal mental health, but disagrees that it provides substantial evidence for discounting Ms. Cartwright's opinion regarding the Plaintiff' functional limitations.

"A GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data." Kennedy v. Astrue, 247 F. App'x 761, 766 (6th Cir. 2007). The Commissioner has further "declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" DeBoard v. Comm'r of Soc. Sec., No. 05–6854, 2006 WL 3690637, *4 (6th Cir. Dec. 15, 2006) (quoting Wind v. Barnhart, 1 No. 04–16371, 2005 WL 1317040, at *6 n.5 (11th Cir. June 2, 2005)) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). Accordingly, while a GAF score may be helpful it assessing a claimant's mental residual functional capacity, it alone is often times insufficient to discredit the entirety of an opinion. This holds particularly true here, where the Plaintiff's 2008 GAF score was assessed two years before Ms. Cartwright rendered her opinion at issue. Moreover, while the Plaintiff's GAF score may very well be attributed to the unique situational stressors she was experiencing at

17

that time, this logic says nothing about the Plaintiff's mental state two years later or the credibility of Ms. Cartwright's opinion. The limitations Ms. Cartwright assessed were in large part based upon the Plaintiff's difficulty interacting with others, responding inappropriately to upsetting events, an inability to leave the home for days at a time due to depression, and difficulties concentrating and remembering details. [Tr. 1000]. The two-year-old GAF score is of little probative value as it neither supports nor undermines Ms. Cartwright's opinion.

Accordingly, the Court will also recommend that this case be remanded to the ALJ to reevaluate Ms. Cartwright's opinion consistent with Social Security Ruling 06-03p.

### B. New Evidence

Five months after the Appeals Council initially denied the Plaintiff's request for review, the Plaintiff submitted new evidence for consideration on October 6, 2014. [Tr. 1-4]. The Appeals Council reopened the case to consider the additional evidence, which consisted of a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" completed by Charles Rodwell, M.D., and Ashley Tindell, L.C.S.W., on March 4, 2013 [Tr. 18-21] and corresponding mental health treatment records, dated October 1, 2012 through April 1, 2014 [Tr. 23-69]. Because this evidence post-dated the ALJ's June 18, 2010 decision, the Appeals Council found that it had no bearing on whether the Plaintiff was disabled on or before the ALJ's decision, and therefore, the Appeals Council declined to review the disability determination. [Tr. 2].

The Plaintiff argues that the additional evidence warrants a change in the ALJ's decision. [Doc. 12 at 21]. Specifically, the Plaintiff contends that pursuant to 20 C.F.R. § 404.970(b), the Appeals Council should have reviewed the evidence, and pursuant to Social Security Ruling 96-6p, "the Appeals Council should direct this case to be reviewed by its medical staff to determine the severity of the claimant's mental impairments." [Id.]. The Commissioner counters that the

18

Appeals Council appropriately declined to review the ALJ's decision because the evidence submitted by the Plaintiff post-dates the ALJ's decision. [Doc. 15 at 12].

The Appeals Council will only consider new and material evidence when "it relates to the period *on or before* the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b) (emphasis added). Here, the additional evidence, which is dated between October 2012 and April 2014, well surpasses the date of the ALJ's June 18, 2010 decision. Notably, the medical source statement completed by Dr. Rodwell and Ms. Tindell specifically states that the earliest date the described symptoms and limitations assessed did not begin until December 12, 2012. [Tr. 21]. Moreover, the Court has not found, and the Plaintiff has not shown, that the remaining evidence relates back to the relevant period in question. Therefore, it was proper for the Appeals Council to decline review of the evidence.

Social Security Ruling 96-6p fails to lend any further support to the Plaintiff's position. The ruling explains that when the Appeals Council receives additional medical evidence that, *in its opinion*, may change a state agency physician's finding whether an impairment is equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, "the Appeals Council must obtain an updated medical opinion from a medical expert." 1996 WL 374180, at *3-4 (July 2, 1996). In the present matter, the Appeals Council made no such finding, and was therefore under no duty to request an updated medical opinion.

Furthermore, this Court is prohibited from considering the evidence in its substantive review of the ALJ's decision. Our appellate court has made clear "that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits," as is the case here, a court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." <u>Cline v. Comm'r of Soc.</u>

19

Sec., 96 F.3d 146, 148 (6th Cir. 1996). However, the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."[1] Id. (citation omitted). This is referred to as a "sentence six remand." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proving all three elements. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

In the instant case, the Plaintiff does not request a sentence six remand, and consequently, does not set forth any argument or support that the evidence is new or material within the meaning of a sentence six remand. Nor does the Plaintiff set forth good cause in this case. The Plaintiff's failure to articulate any argument on the matter leaves nothing further for the Court to review. See Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 499-91 (6th Cir. 2006) (declining "to formulate arguments" or "undertake an open-ended review of the entirety of the administrative record" on behalf of a plaintiff who neither provides an argument or an analysis). Accordingly, the Plaintiff's contention that the additional evidence should have been reviewed by the Appeals Council is without merit.

---

[1] Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott v. Apfel, 28 F. App'x 420, 424 (6th Cir. Jan. 22, 2002)). Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). Finally, good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **GRANTED IN PART AND DENIED IN PART**.   Upon remand, the Court RECOMMENDS that the ALJ reevaluate the opinions of Mr. Ladd and Ms. Cartwright pursuant to Social Security Ruling 06-03p.

Respectfully submitted,

United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).